MARY DOE *vs.* JOHN ROE.[1]

No. 90-P-313.

Worcester. October 7, 1991. - January 31, 1992.

Present: WARNER, C.J., DREBEN, & IRELAND, JJ.

*Parent and Child,* Support of illegitimate child. *Legitimacy. Practice, Civil,* Attorney's fees.

The record of hearings on a complaint for child custody and support did not substantiate the defendant's claim that he was prejudiced by alleged lack of notice that the judge intended to make a final, rather than a temporary, order for support. [64-65]

The evidence at hearings on a complaint for child custody and support warranted the judge's decision to increase the amount of support. [65-66]

In a proceeding on a complaint for custody and support of a child born out of wedlock, the judge properly took into account the defendant's family obligations incurred prior to the birth of the child. [67-68]

In a proceeding for custody and support of a child born out of wedlock, the judge acted properly in awarding the plaintiff her attorney's fees. [68-69]

In a proceeding on a complaint for child custody and support, a provision in the judge's order that the father pay costs of the eight year old child's higher education was premature. [69-70]

A defendant seeking modification of a child support order while the matter was on appeal should have sought leave from this court for the trial judge to enter a modification order. [70]

COMPLAINT for custody and child support filed in the Worcester Division of the District Court Department on December 28, 1987.

The case was heard by *Thomas F. Sullivan, Jr.,* J.

The defendant, pro se.

*Stephen J. Kuzma* for the plaintiff.

---

[1] We use pseudonyms for the names of the parties.

DREBEN, J. After the defendant[2] was found to be the father of the plaintiff's son (born January 7, 1980), he was ordered on October 24, 1984 to pay the plaintiff fifty dollars a week in child support. The order provided that it was to be reviewed in October, 1985. The order was not reviewed, and the plaintiff, in 1987, sought an upward modification. A District Court judge on November 7, 1988, among other things, increased the support order to $200 a week, ordered the payment of counsel fees to the plaintiff, and also ordered the defendant, if his son "desires to further his education beyond high school," to "pay for the costs of such schooling if he has the ability to pay at that time."

The defendant raises numerous challenges to the November 7, 1988 order, including the claim that the needs of his preexisting family were not sufficiently taken into account by the judge because the Child Support Guidelines (1989) (Guidelines), promulgated pursuant to G. L. c. 211B, § 15, unfairly fail to provide for such a family, that counsel fees may not be awarded, as G. L. c. 209C does not authorize them, and that the order for the payment of the costs of higher education was improper. We affirm the order except insofar as it imposes on the defendant the obligation to pay the future costs of his son's higher education.

1. The defendant first argues that he was never given notice that the judge intended to make a final order for support and that he was led to believe that only temporary orders were involved. As a result, he claims that he did not pursue discovery or prepare for, or receive, a full adjudication.

It is true that the trial judge at first considered the matter as a criminal nonsupport case and did not "want to get into a trial," and it is also true that the plaintiff's counsel stated that he wanted a temporary order "before we . . . have a full evidentiary hearing." Despite this initial confusion as to the nature of the proceedings, the record does not substantiate the defendant's claim of prejudice.

---

[2]A man married to a woman other than the plaintiff.

The judge held two hearings on the matter, on September 16, 1988, and on October 13, 1988, and the defendant was accorded full opportunity to present his case. Even if he was first under the impression that only temporary orders were involved, he knew or should have known by the end of the first hearing that the judge intended to enter orders which would conclude the matter. The indications for this conclusion were: 1) the judge's willingness to receive evidence at the next hearing as to the defendant's entire financial situation,[3] 2) the judge's invitation to the parties to present at the next hearing proposed orders which were to cover matters in addition to the amount of support, including the possibility of an order as to higher education, and 3) the judge's intent to hear final arguments from the parties. Indeed, the defendant had consistently argued that the judge had no authority to enter temporary orders.

At the very least, the defendant knew on September 16, 1988, that he should have sufficient facts before the judge on October 13, 1988. Even if discovery had been needed, he had ample time to obtain the facts prior to the judge's order of November 7, 1988. As late as the hearing of October 13, when the plaintiff's counsel offered to submit a supplemental affidavit, the judge answered, "Well do so, because when I decide the case, I want all the information there. If I decide it I don't want to have to request anything else."

That the entry of a final order on November 7, 1988, was not a prejudicial surprise to the defendant is also borne out by his timely motion to amend findings filed after the order. Although his motion raised a number of issues, the defendant did not complain that the order was not a temporary one or that evidence, other than as to his own financial situation subsequent to the hearing, be considered.

---

[3]At the September hearing, the defendant's counsel stated: "I'd like to make a complete and accurate financial statement and make our financial presentation to you. I expect that my client would be on the stand for about a half an hour to get all the information before you, and I think it'd be appropriate."

2. Contrary to the defendant's contention, the evidence supported the judge's finding of a change in circumstances warranting the increased support order. See G. L. c. 209C, § 20. A comparison of the defendant's 1984 and 1988 financial statements shows a net weekly income (after taxes and certain other deductions) in 1984 of $595, and in 1988 of $895. While the defendant indicated at the November hearing that his job was uncertain, his testimony and his financial statement showed that he had substantial assets. He owned his previous residence in Chelmsford which was rented at $750 gross per month. He had recently received $70,000-$75,000 from the sale of his father's house and had recently purchased a new house for $318,000. His equity in the two houses he owned, as shown on his financial statement, was $265,000. His assets in 1984 do not appear on his 1984 financial statement.

The plaintiff testified that her expenses for her son, including child care, had increased since 1984 and that she only received money "spasmodically" from her dying husband.[4] On this evidence the judge could well find a change in circumstances leading to the increased support order. See Heistand v. Heistand, 384 Mass. 20, 27 (1981).

That the defendant subsequently lost his job did not require the judge to amend his November findings or grant the defendant a hearing in February, 1989, even though the judge had originally thought he would hold one. Because of the significant assets owned by the defendant in November, 1988[5] the judge was not required to change the order despite the defendant's temporary loss of earnings. See Krokyn v. Krokyn, 378 Mass. 206, 210 (1979). The judge could decide to wait for a period before changing his order to see how the defendant, a Harvard Law School graduate, would adapt to his new situation.

---

[4]Her 1988 financial statement indicated an increase of $48 in gross income over her 1984 income but a reduction in net income after deductions.

[5]These assets did not include his retirement or pension plans as he omitted to disclose such plans on his financial statement.

For similar reasons, the judge (not the trial judge) who, on June 26, 1989, found the defendant to be in violation of probation for failing to pay the increased amount ordered on November 7, 1988, was not required to hear anew the defendant's protestations that he was unable to pay.[6]

3. At the hearings, as well as on appeal, the defendant claimed that the Guidelines are unfair and discriminatory as they do not take into account his family obligations incurred prior to the birth of his illegitimate son. The defendant has a wife and two children, one of whom is in college. Although the Guidelines do not specifically provide for the defendant's marital situation, and speak only of prior *orders* for spousal and child support or expenses of *subsequent* families, see Guidelines II, I & J, set forth in the margin,[7] it is implicit that the first family of the noncustodial parent of an illegitimate child must also be taken into account.[8]

---

[6]If the defendant had not had substantial assets, his lack of income would have required a hearing on his ability to pay the increased order. See *Sodones* v. *Sodones*, 366 Mass. 121, 130 (1974). See also Guidelines, II H (court may consider potential earning capacity, rather than actual earnings, if it determines that a party is earning substantially less than he or she could through reasonable efforts).

[7]Those sections read as follows:

"I. Prior Orders for Support. To the extent that prior orders for spousal and child support are actually being paid, the court should deduct those payments from the gross income before applying the formula to determine the child support order. This section applies only to orders for child support for children other than the one who is the subject of the pending action."

"J. Expenses of Subsequent Families. In instances where the noncustodial parent has remarried and has children by a subsequent marriage, the court should examine such circumstances closely to determine in the allocation of available resources whether consideration beyond Part II Section I (Prior Orders of Support) should be given when the custodial parent of children born[] of the first marriage, or subsequent marriages appears before the court seeking a modification of the existing child support order. In actions pursuant to G. L. c. 209C, this paragraph shall be construed to apply equally to children born out of wedlock."

[8]Confusion would be eliminated if the Guidelines were amended to cover explicitly the circumstances of a pre-existing family not the subject of a prior order for support.

In setting his order of $200 a week, the judge stated that he considered the Guidelines but noted that they called for an order greatly exceeding $200. In declining to follow the strict letter of the Guidelines, he correctly recognized that a prior intact family, as well as a prior divorced family, is a factor in determining the amount of child support.

The weekly amount of $200 chosen by the judge, while perhaps not deliberately keyed to the Guidelines, is less than the figure which he could have ordered under the Guidelines had there been a prior order for support of the defendant's first two children.[9] Since the judge correctly took into account the defendant's other children, the order was not discriminatory or unfair.

4. Arguing that a judge may not award legal fees in the absence of statutory authorization, the defendant challenges the portion of the November 7, 1988 order which required the defendant to pay the plaintiff legal fees of $4,000. General Laws c. 209C, unlike G. L. c. 208, § 38, does not provide for fees. Despite the lack of specific statutory authority, we think the judge acted properly in awarding fees. Our cases recognize that adequate legal representation "is not materially different from those other needs . . . . which fall within the more common meaning of alimony or support." See *Goldman* v. *Roderiques*, 370 Mass. 435, 436-437 (1976); *Brash* v. *Brash*, 407 Mass. 101, 107 (1990) ("award of attorney's fees is not entirely unlike an order for support

---

[9]This computation is derived by using, as the Guidelines require, the defendant's gross income as shown on his 1988 financial statement ($1,269), and deducting a hypothetical prior order of child support for his first family which takes into account that one of his children is in college. The hypothetical order does not include support for the defendant's wife and does not attribute any income to her although the record indicates she is working.

No figure as to the defendant's wife's earnings was introduced. Such evidence is relevant in calculating a hypothetical prior order of support, i.e., in determining what amount should be calculated as payable to the first family where, because the defendant is not divorced, there is no actual prior order for support.

We do not suggest that where an intact family exists the court must follow this calculation, but note that the judge's figure in this case was fair.

or maintenance and, therefore, it is not automatically stayed pending appeal"); *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985).

Had the plaintiff been seeking a modification under G. L. c. 208, § 37, on behalf of a son born to parents joined in marriage, the judge would have had discretion to award legal fees. G. L. c. 208, § 38. As stated in *Doe* v. *Roe*, 23 Mass. App. Ct. 590, 592 (1987):

> "It now appears to be well established that discriminatory treatment (at least by statute) of children born out of wedlock, as compared with children born to parents married to each other, in matters of support, intestate succession, and remedies in domestic relations controversies, usually will result in an unconstitutional denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States."

The Legislature has acknowledged the need for the equal treatment of children born in or out of wedlock. General Laws c. 209C, § 1, as inserted by St. 1986, c. 310, § 16, specifically states: "Children born to parents who are not married to each other shall be entitled to the same rights and protections of the law as all other children."

Serious constitutional questions would arise were we to interpret the statutes to allow attorney's fees for modification of support orders for children born of divorced parents but not for those born of unmarried parents. Accordingly, we read G. L. c. 209C, § 1, which explicitly states that such children are to be treated equally, as providing legislative support for allowing judges the same discretion to award legal fees in actions seeking support for illegitimate children as is permitted under G. L. c. 208, § 38.

5. The defendant's challenge to the amount of the fee is without merit. There was ample evidence to support the sum awarded. See *Ross* v. *Ross*, 385 Mass. 30, 38-39 (1982).

6. As indicated earlier, the November 7, 1988 order included a provision that if the plaintiff's son "desires to further his education beyond high school," the defendant "will

pay for the costs of such schooling if he has the ability to pay at that time." This portion of the order was premature. The Guidelines, while not specifically mentioning higher educa- tion, state that "[f]or cases involving children between the ages of 18 and 21, the amount of the order, if any, will be left to the court's discretion." The Guidelines thus suggest that generally a judge is to look to current and not to future situations. General Laws c. 209C, § 9, par. (c)(5), as inserted by St. 1986, c. 310, § 16, which allows the trial judge to consider the "need and capacity of the child for education, including higher education" also refers to the present circumstances of the child. What the child will need in ten years and what each parent can then pay is not now ascertainable. The present vague order for future college costs if the son "desires to further his education beyond high school" and if the defendant "has the ability to pay at that time" is inappropriate in these circumstances. Cf. G. L. c. 209C, § 9, and G. L. c. 208, § 28.[10] Cf. also *Kotler* v. *Spaulding*, 24 Mass. App. Ct. 515, 518 (1987).

7. The remaining contentions of the defendant relate to his posttrial motions. a) The motion for relief from judgment on the ground that the plaintiff was deceitful as to her child care expenses was rightly denied for the reason, if for no other, that the material from the Li'l Red Schoolhouse, stressed by the defendant, did not refute the plaintiff's claims of expenses for summer child care.

b) The defendant sought modification of the support order while the case was on appeal and a judge, other than the one entering the November, 1988 order, declined to consider the motion on the ground that the case was on appeal. Upon the judge's ruling that he lacked jurisdiction, the defendant should have followed the procedure suggested in *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 817 n. 12, and in *Wilkinson* v. *Guarino*, 19 Mass. App. Ct. 1021, 1023-1024 n. 6 (1985),

---

[10]General Laws c. 208, § 28, was amended by St. 1991, c. 173, § 1, to permit a judge, under certain conditions, to make current orders of support for children enrolled in educational programs who have attained the age of twenty-one but who have not attained the age of twenty-three.

and asked this court for leave for the trial judge to enter a modification order. Even if modification is considered to be a new proceeding, the serious possibility that a modification might render at least a portion of the appeal moot indicates the suggested procedure should be followed.

The provision as to higher education is vacated; otherwise the order of November 7, 1988 is affirmed. The orders of January 4, 1989, June 26, 1989, January 11, 1990, and January 16, 1990 are also affirmed.

*So ordered.*