## Maureen E. O'Meara *vs.* Richard M. Doherty.

No. 99-P-2081.

Norfolk. November 16, 2001. - January 16, 2002.

Present: Jacobs, Mason, & Kantrowitz, JJ.

*Parent and Child,* Child support, Support of child born out of wedlock. *Practice, Civil,* Support of child born out of wedlock, Attorney's fees.

In an action for child support, the judge did not abuse her discretion in determining the father's current support obligation, where the judge appropriately followed G. L. c. 209C, § 9(*f*), and considered both the child support guidelines and the father's responsibility to provide support for his other child; therefore, the judge was not obligated to make the specific findings required by § 9(*c*) in cases where the child support guidelines are disregarded. [602-605]

In an action for child support brought by the mother seventeen years after the birth of the child, the judge did not abuse her discretion in determining the father's retroactive support obligation, where this court could not find that any of the judge's findings were clearly erroneous, where nothing in the statute precluded the judge from taking into account equitable considerations, and where the judge properly focused on the father's assets and income in determining the obligation. [605-606]

This court concluded that the judge in an action for child support did not abuse her discretion in denying attorney's fees to either party. [606-607]

Complaint for support filed in the Norfolk Division of the Probate and Family Court Department on July 8, 1998.

The case was heard by *Christina L. Harms,* J.

*Bruce A. Kraft* for the plaintiff.

*Margaret S. Travers* for the defendant.

Mason, J. The mother appeals from a judgment of the Probate and Family Court requiring the father of her daughter, Jacqueline, to make current child support payments of $180 per week and also to pay retroactive child support in the amount of $10,200. The mother claims that the trial judge: (1) deviated substantially from the Massachusetts Child Support Guidelines

(guidelines) in setting the current support obligation, without making the specific findings required by G. L. c. 209C, § 9; (2) punished the mother impermissibly, for "sitting on her rights," in setting the amount of retroactive child support; and (3) abused her discretion in failing to award the mother attorney's fees. We affirm the judgment.

*The facts.* Both parties submitted financial statements and testified at an evidentiary hearing. We summarize the judge's findings and other undisputed facts in the materials before us.

The parties had a nonmarital relationship from May until December, 1979. In July, 1980, the mother telephoned the father and told him that she was pregnant but did not specifically claim either that the child was his or that he was financially obligated to her in any way. The child, Jacqueline, was born on August 21, 1980.

The father married another woman in April, 1983, and, with his wife, had a son, Richard, in August, 1984. The father thereafter lived with his wife and son in South Boston and was employed as a Boston police officer. Although she was able to do so, the mother did not notify the father of Jacqueline's birth or attempt any further contact with him until late 1997. Rather, the mother alone provided for Jacqueline's support, maintenance and care. During this period, the mother was employed by Bell Atlantic Company and lived with Jacqueline in the metropolitan Boston area.

Sometime in late 1994 or early 1995, the mother met the father and his son by chance at a shopping mall. At that time, the father introduced his son to the mother and the mother said that "her daughter" was also at the mall, but at a different location. At no time during this conversation did the mother tell the father that he was Jacqueline's father.

Notwithstanding the foregoing, sometime in December, 1997, counsel for the mother telephoned the father and told him that the mother would be seeking his assistance with Jacqueline's educational expenses and medical insurance. Thereafter, following the performance of genetic tests indicating to a virtual certainty that he was Jacqueline's father, the father signed a voluntary acknowledgement of paternity and, in July, 1998, the mother commenced the instant proceeding pursuant to G. L.

c. 209C for support, custody and visitation. On August 12, 1998, the judge made a temporary support order directing the father to pay $180 per week in such support.

*The judge's decision.* The judge made detailed findings regarding the parents' respective incomes over the past eighteen years and also their current financial conditions. More specifically, the judge found that the father's current gross pay, including night shift differential, overtime and details, was $1,366.55 per week, or $71,050 per year, and that his assets included a home in South Boston and undeveloped land in Vermont, his combined equity in which was approximately $21,000, a Chevrolet truck worth approximately $9,000, a defined benefit plan with the city of Boston, deferred compensation, and life insurance coverage with a death claim value of $73,000. The judge further found that the mother was currently earning $12,480 per year from part-time employment with Bell Atlantic, was also receiving $21,508 per year in pension payments from Bell Atlantic, and had liquid assets of approximately $24,000 as well as equity in her home of $34,000. The judge calculated " 'Guidelines' child support" using the foregoing income figures, and stated that "with an appropriate reduction on account of [the father's] support obligation to his son," the guidelines would require a current child support payment of $180 per week, which is what she would order since "there is no basis for departure from the Guidelines at the present."

With respect to retroactive child support, the judge stated that "where the mother never pursued the father for support for 17 years (whether this decision was premised on a streak of independence, or foolhardiness, or otherwise) it would be grossly inequitable to now impose upon [the father] anything other than substantially reduced retroactive support." The judge then stated that "[g]iven the 17 years that have passed, it is impossible to calculate retroactive support with mathematical precision," and that she had accordingly adopted a round figure of $50 per month for the entire seventeen-year period, producing a total amount owed of $10,200. The judge concluded that "[a]s I find [the father] has no current ability to pay this amount in a lump sum, I have elected to allow him to pay it at the same rate it accrued (i.e., $50 per month) until paid in full."

In accordance with the foregoing findings and conclusions, the judge caused a judgment to be entered on February 17, 1999, directing the father to make support payments to the mother of $180 per week until Jacqueline turned eighteen or graduated from high school, whichever was later, and also providing that should the mother seek support beyond that date, then she would be required to file a complaint for modification. The judgment further ordered the father to pay retroactive child support in the amount of $50 per month until the total indebtedness of $10,200 had been satisfied. The judgment finally provided that the requests of both parties for attorneys' fees were denied.

1. *Failure to follow guidelines in establishing current support obligation.* Although the judge specifically stated that she was following the guidelines in setting the father's current support obligation, the mother claims that this is not so, and that the guidelines mandated a support obligation of $335.15 per week, rather than the $180 per week ordered by the judge. The mother further claims that the judge's failure to follow the guidelines violated G. L. c. 209C, § 9, since the judge made none of the findings which the statute requires when the guidelines are not followed.[1]

General Laws c. 209C was enacted by the Legislature in

---

[1]The father contends that the mother is judicially estopped from making this argument, and from appealing from the current support order at all, because in June, 1999, after the judgment containing the order had been entered and the mother had filed her notice of appeal, the mother filed a complaint for modification of the order without obtaining leave from this court to do so. See *Springfield Redev. Authy.* v. *Garcia*, 44 Mass. App. Ct. 432, 434-435 (1998). The father further contends that, in order to excuse this failure, the mother represented to the judge hearing the complaint for modification that she had not appealed from the current support order, but only from the retroactive support order. In fact, as noted above, the judgment containing the current support order provided that the order would remain in effect only until Jacqueline had turned eighteen, or had graduated from high school, whichever was later, and that, if the mother sought to obtain support after that date, she would need to bring a complaint for modification seeking such further support, which is precisely what she did. In these circumstances, contrary to the father's assertions, we do not think that the mother needed to obtain this court's permission prior to bringing her complaint for modification, or that the doctrine of judicial estoppel can apply as a result of any representation the mother may have made with respect to the nature of her appeal. See *Paixao* v. *Paixao*, 429 Mass. 307, 309-310 (1999).

1986 to give children born to parents who are not married to each other the same rights and protections of the law as all other children in similar circumstances. G. L. c. 209C, § 1, inserted by St. 1986, c. 310, § 16. Section 9(*a*) of the statute provides that, if a court finds a parent chargeable with the support of a child, the court shall make an order in accordance with subsection (*c*) of the section requiring the parent to make payments toward the current support and maintenance of the child. Subsection (*c*) in turn states that, in determining the amount of such support, the court shall follow the guidelines unless it makes certain specified findings. More specifically, § 9(*c*), as rewritten in 1993, provides the following in cases where a court departs from the guidelines:

> "[T]he court shall make specific written findings indicating the amount of the order that would result from application of the guidelines; that the guidelines amount would be unjust or inappropriate under the circumstances; the specific facts of the case which justify departure from the guidelines; and that such departure is consistent with the best interests of the child."

G. L. c. 209C, § 9(*c*), inserted by St. 1993, c. 460, § 75.

Also in 1993, however, a new subsection (*f*) was added to the statute, providing that in cases where the father is obligated to support another child, the court, in addition to applying the guidelines, "shall take into consideration such responsibility in setting the amount to be paid under the current order for maintenance or support." G. L. c. 209C, § 9(*f*), inserted by St. 1993, c. 460, § 75A. More specifically, § 9(*f*) provides as follows:

> "In determining the amount to be paid, the court, in addition to applying the standards established by the chief justice for administration and management, shall determine whether the obligor is responsible for the maintenance or support of any other children of the obligor even if a court order for such maintenance or support does not exist. If the court determines that such responsibility does, in fact, exist and that such obligor is fulfilling such responsibility, such court shall take into consideration such responsibility

in setting the amount to be paid under the current order for maintenance or support."

G. L. c. 209C, § 9(*f*), as amended by St. 1995, c. 38, § 168.[2]

In the present case, the judge found that the father was responsible for the support of another child and was fulfilling that responsibility. The judge therefore appropriately followed § 9(*f*) of the statute and considered both the guidelines and the father's responsibility to provide support for his other child. The judge was not obligated to make the specific findings that § 9(*c*) requires in cases where the guidelines are disregarded, because the judge did not disregard the guidelines. Compare *Department of Rev.* v. *Foss*, 45 Mass. App. Ct. 452, 458-459 (1998) (judge's findings were inadequate to justify departure from guidelines in case where father had no other support obligation).

The mother further asserts that, even if the judge was not required to make the findings required by § 9(*c*), the judge should not have reduced the guidelines amount by as much as 46 percent, from $335.15 per week to $180.00 per week, because there was evidence that the father's wife was earning $45,000 to $48,000 per year from employment, and hence the father was not the sole source of support for his other child. The judge, however, had considerable discretion to determine the amount she would deduct from the guidelines amount to reflect the father's responsibility to support his other child. See *Department of Rev.* v. *G.W.A.*, 412 Mass. 435, 441 (1992); *Department of Rev.* v. *Foss, supra* at 459. While the wife's income was relevant to the father's ability to use his income and assets to provide support for his first child, see *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 342 (1980); *Cooper* v. *Cooper*, 43 Mass. App. Ct. 51, 55 (1997), it was not so substantial as to suggest that the father was not contributing to the support of his other child.[3] In the circumstances shown by the record, the judge's deduction of $155.15 from the guidelines amount of

[2]This amendment of subsection (*f*), the only one since its creation, merely substituted "justice for administration and management" for "administrative justice of the trial court" and is not material to our analysis.

[3]We note that although it was not specifically called for by the standardized "Child Support Guidelines Worksheet" submitted to the judge by the father,

$335.15 per week to reflect the father's responsibility to provide support for his other child was not unreasonable.

Since the judge's comprehensive findings suggest that she fully considered the relevant facts articulated in § 9(*f*), we find no abuse of discretion in the judge's determination of the father's current support obligation. See *Department of Rev.* v. *G.W.A.*, *supra* at 440-441.

2. *Determination of retroactive support.* Section 9(*a*) of c. 209C, as amended by St. 1995, c. 38, § 167, further provides that, upon the petition of a party, the court "shall also order past support for the period from the birth of the child to the entry of the order, taking into consideration the parent's ability to pay under subsection (*c*) and any support provided by the parent during such period." The apparent reason for this provision requiring the award of retroactive support is that "[t]here is a greater need for retroactive orders to protect children born out of wedlock than other children because the paternity of a father of a child born out of wedlock is not presumptively established by the fact of marriage and may take some time to be established." See *Department of Rev.* v. *Roe*, 29 Mass. App. Ct. 967, 968 (1990).

As we have previously noted, however, the judge found that the mother had delayed for more than seventeen years, until December, 1997, in putting the father on notice that she claimed that he was the father of Jacqueline, and also found that the father neither knew nor should have known that he was in fact the father of Jacqueline. The judge further found that the father did not have the present means to make a significant lump sum payment in retroactive child support. Based on these findings, the judge determined that it would be "grossly inequitable" to impose upon the father "anything other than substantially reduced child support." The judge then determined that this reduced child support should be no more than $50.00 per month for the seventeen-year retroactive period.

The mother claims that the judge's findings with respect to the father's lack of notice or knowledge are clearly erroneous, but she has made no showing that this is so. Indeed, she has

he there set out a figure of $145.34 for what he termed his weekly "obligation for first family."

included in the record only a few pages of the trial transcript. As a result of the mother's failure to provide a complete copy of the trial transcript, we cannot find that any of the judge's factual findings are clearly erroneous. See *Kunen* v. *First Agric. Natl. Bank*, 6 Mass. App. Ct. 684, 691-692 (1978). See also *Cameron* v. *Carelli*, 39 Mass. App. Ct. 81, 83-84 (1995), and cases cited.

The mother further contends that, because the statute does not contain any statute of limitations, she could not be penalized for her delay in seeking child support. There is nothing in the statute, however, which precluded the judge from taking into account equitable considerations of the type the judge relied on in determining the amount of retroactive child support to be awarded in this case. To the contrary, the statute mandates that the court must consider the parent's ability to pay and any prior support paid by the parent, but it does not preclude the court from considering additional equitable factors where appropriate. See *Department of Rev.* v. *G.W.A.*, *supra* at 439-440 ("When a judge determines that application of the guidelines would produce an unjust or inappropriate result, the judge must attempt to fashion a more equitable order based on all the relevant considerations"). See also *G.E.B.* v. *S.R.W.*, 422 Mass. 158, 166 (1996) (equitable defense of laches may apply to claim brought under G. L. c. 209C if there is proof that there has been unjustified, unreasonable, and prejudicial delay in bringing claim).

The mother finally claims that the judge erred in failing to consider his wife's income in determining the father's retroactive support obligation. As we have previously noted, however, the wife's income was relevant only to the father's ability to use his own assets and income in meeting his support obligation. The judge therefore properly focused on the father's assets and income in determining the amount of the father's retroactive support obligation. There was no abuse of discretion in the judge's determination of such amount in the circumstances of this case.[4]

3. *Denial of attorneys' fees.* The judge had discretion to award

[4]Pointing to the fact that current support was commenced only in August, 1998, whereas Jacqueline was born in August, 1980, the mother claims in a

the mother her counsel's fees, but was not required to do so. See *Doe* v. *Roe*, 32 Mass. App. Ct. 63, 68-69 (1992). Having reviewed the judge's detailed findings regarding both parties' assets and income, we can discern no abuse of discretion in the judge's decision not to award attorney's fees to either party. See *Williams* v. *Massa*, 431 Mass. 619, 635 (2000).

*Judgment affirmed.*

---

reply brief that the judge erred in requiring the father to pay only seventeen years in retroactive child support, rather than eighteen. The mother could have caused any such computation error, if there was one, to be corrected long before now. See Mass.R.Dom.Rel.P. 59(e), 60(a) (1975). Moreover, a party may not of right raise new contentions that could have been raised in her main brief. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Campbell Hardware, Inc.* v. *R.W. Granger & Sons, Inc.*, 401 Mass. 278, 280 (1987).