## DEPARTMENT OF REVENUE *vs.* MASON M.[1]

Worcester. April 7, 2003. - July 1, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Parent and Child,* Child support, Support of child born out of wedlock. *Practice, Civil,* Notice of appeal, Support of child born out of wedlock.

A probate court judge's award of child support to a nonmarital child in the amount of $272.60 a week, or thirty per cent less than the "minimum presumptive level of support" that would have resulted from strict application of the Massachusetts Child Support Guidelines (guidelines), resulted from the judge's misapplication of the guidelines and was inconsistent with the nonmarital child's best interests, where a downward adjustment to the nonmarital child's support order to ensure the father's ability adequately and equitably to support all three of his children (including two marital children) was not warranted. [668-672]

The Department of Revenue (department) timely filed a notice of appeal sixty-six days after the entry of a memorandum of decision dismissing the department's complaint for modification of a child support judgment, where a judgment of dismissal was later entered on the docket, and where the department filed its appeal within sixty days from the filing of that judgment. [672-673]

A probate judge erred in granting summary judgment to the father of a nonmarital child in an action to modify an award of child support, where the availability of the father's wife's income to support the marital household created an issue of fact for trial; moreover, it was arguable that the nonmarital child's mother's financial situation had deteriorated since the entry of the child support judgment. [673-676]

COMPLAINT to establish paternity filed in the Worcester Division of the Probate and Family Court Department on January 6, 2000.

The case was heard by *Joseph L. Hart,* J., and a complaint for modification, filed on February 2, 2001, was heard by him on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

[1]A pseudonym. The names of the mother and the child at issue in this case are also pseudonyms.

*Mark I. Zarrow* for the defendant.

*John E. Bowman, Jr.,* Assistant Attorney General, for the plaintiff.

*Pauline Quirion & Peter G. Coulombe,* for Greater Boston Legal Services, amicus curiae, submitted a brief.

SPINA, J. On January 6, 2000, the Department of Revenue child support enforcement division (department), filed, on behalf of Maryanne R. (mother) and the Department of Transitional Assistance, a complaint against Mason M. (father) to establish the paternity of Erin, a nonmarital child.[2] The father subsequently stipulated to paternity and was ordered by a judge of the Probate and Family Court to pay child support in the amount of $272.60 a week (child support judgment). The department filed a timely appeal, challenging the judge's application of the Massachusetts Child Support Guidelines (guidelines). The appeal was stayed by a single justice of the Appeals Court based on the department's representation that it intended to file a complaint for modification alleging a substantial change in the household income of the father. On February 2, 2001, the department filed its complaint for modification of the child support judgment. The father filed a motion for summary judgment, which was allowed, and the complaint for modification was dismissed without prejudice. The department filed a notice of appeal from the judgment of dismissal, and the appeal was consolidated with the department's appeal from the child support judgment. The case was transferred, sua sponte, from the Appeals Court. We now vacate the child support judgment, reverse the judgment of dismissal of the complaint for modification, and remand the case to the Probate and Family Court for further proceedings consistent with this opinion.[3]

1. *Background.* Erin was born on June 15, 1999, and lives with her mother, who is not married. A financial statement submitted by the mother in conjunction with the paternity complaint showed that she was unemployed, that her sole source of income was $112 a week ($5,824 annually) in public as-

---

[2]We use the term "nonmarital child" to describe a child born to parents who are not legally married to each other. See *Woodward* v. *Commissioner of Social Sec.,* 435 Mass. 536, 543 n.12 (2002).

[3]We acknowledge the amicus curiae brief filed by Greater Boston Legal Services.

sistance for the benefit of Erin, that her total weekly expenses were $144, and that her only asset was $460 in a retirement plan with her prior employer.[4]

Erin's father is a physician and is married. The financial statement that he submitted in conjunction with the paternity complaint showed that his gross income from employment was $2,007.85 a week ($104,408.20 annually),[5] that his total weekly expenses were $1,777.75, and that the aggregate value of his assets was $376,726. The father's wife (wife) is also a physician, and they have two children, one of whom is older than Erin and the other of whom is younger. Around the time that the paternity complaint was filed, the wife stopped working because of the impending birth of the second marital child.

Following the trial on the paternity complaint, the mother was granted sole legal and physical custody of Erin, and the father did not request visitation. In his findings of fact, the judge stated that the amount of support that would result from strict application of the guidelines was $389.42 a week.[6] However, the judge opined that this amount of child support would be unjust or inappropriate because the father was also responsible for the support of his wife and two marital children, and for the maintenance of the marital household. The judge stated that an order of child support commensurate with the guidelines would at least double the mother's weekly income, but would render the father unable to pay his basic weekly expenses, a consequence that would have a significant negative impact on the father and his preexisting family. Based on these considerations, the judge concluded that $272.60 a week would be appropriate for the maintenance and support of Erin.[7] The judge opined that his approach to the guidelines was in Erin's

---

[4]In 1999, the year that Erin was born, the mother earned $8,674 from employment and received $2,676 in public assistance.

[5]The father also received a bonus of $9,696.59 in 2000, although it is unclear from the record whether he received it at the beginning of the year or at the end.

[6]The guidelines in effect at the time did not apply to gross income of the noncustodial parent that exceeded $75,000. The judge arrived at the figure of $389.42 a week by dividing $75,000 of the father's gross income by fifty-two for a weekly gross income of $1,442.31, and then applying the relevant percentage set forth in the guidelines for one child, 27%.

[7]The judge calculated the figure of $272.60 a week in child support by the

best interests because $272.60 a week exceeded the mother's needs, as set forth on her financial statement, by $128.50 a week.

In considering the department's subsequent complaint for modification, the judge concluded that there had not been a substantial change in circumstances since entry of the child support judgment to warrant modification. The judge found, based on the pleadings and a new financial statement that the father submitted, that the father's income had only increased by $30.62 per week. The judge stated that the real basis for the department's modification complaint was the fact that the wife had returned to work as a physician following maternity leave. While the father derived some economic benefit from his wife's resumption of employment, the judge opined that such circumstance did not necessarily mean that substantial money or assets had become available for the support of Erin.[8] The judge also concluded that modification would not further Erin's best interests. He opined that, based on a new financial statement that the mother submitted, Erin's needs had remained relatively unchanged and were clearly being met.

2. *Child support order.* The department first points out that Erin's support order for $272.60 a week was 30 per cent less than the "minimum presumptive level of support" of $389.42 a week, based on the application of the guidelines. The department argues that because the father's annual gross income was

following method. He started with the maximum annual income of $75,000, as set forth in the guidelines. Then he divided $75,000 by fifty-two weeks, and arrived at a gross weekly income of $1,442.31. The judge then created a "hypothetical" support order for the father's marital children. He multiplied the father's gross weekly income of $1,442.31 by 30 per cent (the percentage set forth in the guidelines for two children) to determine that $432.69 of this weekly income should be set aside for the marital children. The judge subtracted $432.69 from the father's gross weekly income of $1,442.31, leaving the sum of $1,009.69 as the base amount from which to calculate Erin's support order. Applying the percentage set forth in the guidelines for one child, 27 per cent, to $1,009.69, the judge arrived at the sum of $272.60 for Erin.

[8]The department served the father with interrogatories that requested, inter alia, information concerning the wife's contributions to the expenses of the marital household in light of her return to work. The father responded that he and his wife shared household expenses, but he did not elaborate on her specific contributions. The department then served the father with supplemental interrogatories seeking this particular information. There is nothing in the record to indicate that these supplemental interrogatories were answered.

considerably above $75,000, his income in excess of that amount was more than enough to provide for the support of his two marital children. Consequently, the department contends that the reduction in Erin's support order to $272.60 resulted from the judge's misapplication of the guidelines and was not consistent with Erin's best interests. We agree.

Two important public policies are furthered by the Massachusetts child support scheme: (1) providing for the best interests of children, and (2) ensuring that the taxpayers are secondary to the parents in meeting the financial needs of dependent children. See G. L. c. 119A, § 1; G. L. c. 209C, § 9 (*c*). See also *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 445 (2000) ("both State and Federal law are explicit in providing for the broadest possible support of minor children by their parents"); *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 813 (1999). General Laws c. 209C, inserted by St. 1986, c. 310, § 16, was enacted by the Legislature to give children born out of wedlock "the same rights and protections of the law as all other children." Section 9 (*a*) of this statute provides that, if a court finds a parent chargeable with the support of a child, the court shall make an order in accordance with subsection (*c*) requiring the parent to make payments toward the current support and maintenance of the child. Pursuant to G. L. c. 209C, § 9 (*c*), in determining the amount of such support, the court shall follow the guidelines, which set forth a mathematical formula for computing the child support obligations of a noncustodial parent, unless the court makes certain specified findings.[9] See *Crowe* v. *Fong*, 45 Mass. App. Ct. 673, 677 (1998). The guidelines were promulgated with several fundamental social policies in mind, including (1) to "encourage joint parental responsibility for child support in

---

[9] "There shall be a rebuttable presumption that the amount resulting from application of the guidelines is the appropriate amount of child support to be ordered. If, after taking into consideration the best interests of the child, the court determines that a party has overcome such presumption, the court shall make specific written findings indicating the amount of the order that would result from application of the guidelines; that the guidelines amount would be unjust or inappropriate under the circumstances; the specific facts of the case which justify departure from the guidelines; and that such departure is consistent with the best interests of the child." G. L. c. 209C, § 9 (*c*).

proportion to, or as a percentage of income"; (2) to "meet the child's survival needs in the first instance, but to the extent either parent enjoys a higher standard of living to entitle the child to enjoy that higher standard"; (3) to "protect a subsistence level of income of parents at the low end of the income range whether or not they are on public assistance"; and (4) to "take into account the non-monetary contributions of both the custodial and non-custodial parents." Child Support Guidelines, preamble. "The protection of minor children, most especially those who may be stigmatized by their 'illegitimate' status . . . has been a hallmark of legislative action and of the jurisprudence of this court." *L.W.K.* v. *E.R.C., supra* at 447-448.

As pertains to this case, the guidelines specifically state that they are not meant to apply where the gross income of the non-custodial parent exceeds $75,000. See Child Support Guidelines II-C. This language has been interpreted to mean that it is the amount by which a noncustodial parent's income *exceeds* the threshold income level of $75,000 to which the guidelines need not be applied. See *Richards* v. *Mason*, 54 Mass. App. Ct. 568, 573 n.9 (2002); *Pearson* v. *Pearson*, 52 Mass. App. Ct. 156, 159-160 (2001). The guidelines dictate that "[i]n cases where income exceeds [$75,000], the court should consider the award of support at the [$75,000] level as a minimum presumptive level of support to be awarded. Additional amounts of child support may be awarded at the judge's discretion." Child Support Guidelines II-C. See *Pearson* v. *Pearson, supra.* In other words, a noncustodial parent who earns more than $75,000 in gross annual income is required to pay, in the first instance, a "minimum presumptive level of support" based on a $75,000 level of annual income. A judge may then make an upward adjustment to the amount of child support warranted in a particular situation to reflect the fact that the noncustodial parent's income exceeds $75,000. *Id.* at 160.

Here, the judge found that the father's gross weekly income was $2,007.85 ($104,408.20 annually), and he correctly calculated that the amount of Erin's child support resulting from strict application of the guidelines would be $389.42 a week, the "minimum presumptive level of support" based on the designated $75,000 level of annual income. However, the

judge then reduced Erin's weekly support to $272.60, based on a finding that the father was also responsible for the support of two marital children. The judge fashioned a "hypothetical" support order for these marital children, the amount of which was subtracted from $75,000 before the actual support order for Erin was calculated and irrespective of the fact that the father's gross income substantially exceeded $75,000.[10] Such calculation constituted an erroneous application of the guidelines.

The guidelines provide that "[t]o the extent that prior orders for . . . child support are *actually* being paid, the court should deduct those payments from the gross income before applying the formula to determine the child support order" (emphasis in original). Child Support Guidelines II-I. Because the two marital children were part of an intact family, there was no *prior order* for child support in effect to provide for their financial needs. Thus, subsection I of the guidelines was not strictly applicable to the calculation of Erin's support order.

That said, the judge was correct to consider the fact that the father had a responsibility to support his marital children, a responsibility that no one disputes he was fulfilling. General Laws c. 209C, § 9 (*f*), imposes on a judge the obligation to determine "whether the obligor is responsible for the maintenance or support of any other children of the obligor even if a court order for such maintenance or support does not exist." To the extent that the obligor does have such a responsibility and is properly fulfilling it, the judge shall take that fact into consideration in setting the amount to be paid pursuant to an actual support order. G. L. c. 209C, § 9 (*f*). See *Doe* v. *Roe*, 32 Mass. App. Ct. 63, 67-68 (1992) (prior, intact family of non-marital child's parent is a factor in determining amount of child support).[11] See also *O'Meara* v. *Doherty*, 53 Mass. App. Ct. 599, 604 (2002). Here, because the two marital children were

---

[10]The result of the judge's calculation was that the father's support obligation with respect to his marital children assumed that he had an annual gross income of $75,000, while the father's support obligation with respect to Erin assumed that he had an annual gross income of only $52,500.

[11]As the Appeals Court cogently noted in *Doe* v. *Roe*, 32 Mass. App. Ct. 63, 67 (1992), the guidelines only address prior *orders* for spousal and child support, or the expenses of *subsequent* families. See Child Support Guidelines II-I, II-J. "Confusion would be eliminated if the Guidelines were amended to

not the subject of a prior order of support, the judge should have simply calculated Erin's support order by applying the criteria set forth in the guidelines. Recognizing that the "minimum presumptive level of support" was based on a $75,000 level of annual income, and that the father's actual gross income was at least $104,408.20 a year, the judge should have deducted the "hypothetical" support order for the marital children from the father's gross income. Just as amounts for an actual support order are to be deducted from gross income (not from the $75,000 maximum), any "hypothetical" support order should logically be deducted from gross income. Here, that "hypothetical" support order could be fully satisfied from the father's excess income above $75,000.[12] The father's financial circumstances were such that no downward adjustment to Erin's support order was necessary to ensure his ability adequately and equitably to support all three of his children. Cf. *O'Meara* v. *Doherty, supra* at 601 (allocating father's income of $71,000 between two families). Moreover, it is neither unreasonable nor unjust to require noncustodial parents to adjust their monthly expenses in order to provide for the support of their minor children in a manner that will best serve their welfare. See *Whitney* v. *Whitney*, 325 Mass. 28, 31-32 (1949). The effect of the child support judgment entered here was to treat Erin in a manner that was grossly inferior to the treatment of the two marital children. Such treatment was contrary to the fundamental social policies set forth in the guidelines.

3. *Complaint for modification.* We first consider a procedural matter. The father asserts that the department failed to file a timely notice of appeal with respect to the dismissal of its complaint for modification. Pursuant to Mass. R. A. P. 4 (a), as amended, 430 Mass. 1603 (1999), the department had sixty days from the date the judgment entered to file an appeal.

---

cover explicitly the circumstances of a pre-existing family not the subject of a prior order for support." *Doe* v. *Roe, supra* at 67 n.8.

[12] If the marital children had, in fact, been the subject of a prior support order, they would have been entitled to receive $432.69 in weekly child support pursuant to the guidelines, or almost $22,500 a year. The difference between the father's actual annual income of $104,408.20 and a presumptive $75,000 level of annual income is $29,408. This amount would have been more than sufficient to satisfy a "hypothetical" support order of $22,500.

Notwithstanding the fact that a "judgment of dismissal" was entered on the docket on October 31, 2001, the father points out that the judge's "memorandum of decision and order" was entered on the docket on September 25, 2001, and that the order on the last page of the memorandum dismissed the department's complaint for modification. The father contends that, because the department did not file its notice of appeal until November 30, 2001, sixty-six days after entry of the "memorandum of decision and order," it was untimely. We disagree.

In *Lewis* v. *Emerson*, 391 Mass. 517, 519-520 (1984), we considered whether the "separate document" requirement of Mass. R. Civ. P. 58 (a), as amended, 371 Mass. 908 (1977),[13] required dismissal of an appeal for lack of a final judgment where the clerk entered on the docket a single document consisting of the judge's findings of fact, rulings of law, and "judgment." *Id.* at 519. We held that a memorandum can function as a judgment where the " 'judgment' is visually distinct from other parts of the document in which it is contained, such that no confusion can exist concerning its import, and the *'judgment'* is noted on the court's docket" (emphasis added). *Id.* at 520. It is the entry of a final judgment, not the order found in the concluding paragraph of the judge's memorandum of decision, that starts the appellate clock. See *Swift & Co.* v. *Superior Pet Prods., Inc.*, 5 Mass. App. Ct. 904 (1977). Here, the "judgment of dismissal" was not entered on the court's docket until October 31, 2001. Therefore, we conclude that the filing of the department's notice of appeal on November 30, 2001, was timely.

With respect to the merits, the department contends that the judge erred in granting the father's motion for summary judg-

---

[13]Rule 58 (a) of the Massachusetts Rules of Civil Procedure, as amended, 371 Mass. 908 (1977), provides in relevant part that: "(1) . . . upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied . . . the clerk, unless the court otherwise orders, shall forthwith prepare, sign and enter judgment without awaiting any direction by the court; (2) upon a decision by the court granting other relief . . . the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it. Every judgment shall be set forth on a separate document . . . . A judgment is effective only when so set forth or filed and when entered as provided in Rule 79(a)." The language of Mass. R. Dom. Rel. P. 58 (a) (2003) is substantially the same.

ment and in dismissing the department's complaint for modification. The department argues that the issue whether the wife's resumption of employment as a physician enabled her to contribute to the financial support of the marital household, thereby increasing the amount of income that the father had available to support Erin, was a genuine issue of fact for trial. Furthermore, the department asserts that the judge ignored deleterious changes that had occurred in the mother's financial condition since the child support judgment was entered.

Rule 56 (h) of the Massachusetts Rules of Domestic Relations Procedure (2003) provides that a judge shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party, here the father, must "affirmatively demonstrat[e] that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial." *Pederson v. Time, Inc.*, 404 Mass. 14, 17 (1989). We consider the department's complaint for modification in light of these principles.

A judge's authority to modify a support order is statutory. See G. L. c. 209C, § 20. "A support order may be modified if the judge finds a 'substantial change in the circumstances of the parties or the child has occurred and finds modification to be in the child's best interests.' " *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 451 (2000), quoting G. L. c. 209C, § 20.

The judge here erred in granting the father's motion for summary judgment because the availability of the wife's income to support the marital household created an issue of fact for trial. In his memorandum of decision on the paternity complaint, the judge justified a reduction in the amount of Erin's support on the ground, inter alia, that the wife had recently given birth to a child and did not intend to return to work in the foreseeable future. The fact that the wife was on unpaid maternity leave meant that the father was entirely responsible for the financial support of the marital household. However, when the complaint for modification was filed, the wife had returned to her employ-

ment as a physician. Thus, one of the significant factual underpinnings of the child support judgment had disappeared. While acknowledging that the father "clearly derive[d] some economic benefit from his Wife having returned to work," the judge concluded that this change of circumstance was insufficient to justify a modification of Erin's support order.[14]

A judge may consider the income or assets of one spouse when fashioning a support order for a child of the other spouse. See *Matteson* v. *Matteson*, 23 Mass. App. Ct. 945, 946 (1986); *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 342 (1980). Cf. *Cooper* v. *Cooper*, 43 Mass. App. Ct. 51, 55 (1997) (income of second spouse may be considered in calculating obligor's ability to pay alimony). The wife in this case, like the father, had a legal responsibility to support the two marital children, even though she did not have a duty to support Erin. See *Department of Revenue* v. *Roe*, 29 Mass. App. Ct. 967, 968 (1990) ("both by common law and statute, it is well established that married parents are obligated to support their children from the time of birth"). The income and assets of one spouse are relevant to the ability of the other spouse to use his or her own income and assets to satisfy a support obligation. See *O'Meara* v. *Doherty*, 53 Mass. App. Ct. 599, 604 (2002); *Silvia* v. *Silvia, supra.* Because the income of the wife contributed to the support of the marital household, the father had available more of his own money with which to provide for the financial well-being of Erin.[15] See *Matteson* v. *Matteson, supra* at 946.

The judge based his decision, in part, on *Swenson* v. *Wood,*

---

[14]In allowing the father's motion for summary judgment, the judge adopted a double standard. The wife's lack of income was used to justify a downward adjustment in the amount of support that Erin would receive pursuant to the guidelines. However, the restoration of the wife's income when she returned to work was not considered as a reason for modifying Erin's support, notwithstanding the availability of the wife's income to support the marital household.

[15]In his memorandum of decision, the judge stated that Erin was the father's "second family" and that the father's support obligation rested primarily with his wife and two marital children. The judge's comments suggest an erroneous and discriminatory presumption that the father's responsibilities to his marital children trump his responsibilities to Erin simply because she is a nonmarital child. See G. L. c. 209C, § 1; *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 447-448 (2000).

12 Mass. App. Ct. 923, 924 (1981), where, after making factual findings, the judge there concluded that "[a]lthough mother derives some economic benefits from [the present husband's] income[,] it is not shared in such a manner as to make substantial moneys or assets available for the support, education or maintenance of her son." Here, there are no factual findings, as there were in *Swenson* v. *Wood, supra,* that the wife's income "[was] not shared in such a manner as to make substantial moneys or assets available" for Erin. In his answers to interrogatories, the father plainly admitted that the wife "shared" the household expenses. The issue whether the wife's return to work meant that additional income had become available for the support of the marital children, thereby freeing up more of the father's income for the support of Erin, was a genuine issue of material fact, and summary judgment should have been denied. See Mass. R. Dom. Rel. P. 56 (h).

In allowing the father's motion for summary judgment, the judge stated that "[t]he needs of [Erin] [had] remained relatively unchanged according to the financial statement submitted by [the mother], and her needs [were] clearly being met." However, an examination of that financial statement, together with the mother's affidavit, shows that, since the entry of the child support judgment, the mother remains unemployed, she has lost her public assistance, she has lost part of her housing subsidy as a result of the child support that she has received, her food stamp benefits have decreased, and her efforts to obtain work have been thwarted by the cost of day care. Arguably, the mother's financial condition has substantially deteriorated, thereby hampering her ability to provide for Erin's support and maintenance.[16]

4. *Conclusion.* The judgment entered June 13, 2000, pertain-

---

[16]While we conclude that summary judgment should not have been granted, we express no opinion on whether the complaint for modification should now be allowed. Where, as here, a parent's income exceeds $75,000, the judge has discretion to award support above the minimum presumptive level. Before deciding whether to exercise that discretion in this case, the facts concerning the father's and wife's current income should be considered. The department's complaint sufficiently identifies significant changed circumstances – the wife's return to work as a physician and the mother's deteriorating financial situation – to warrant the judge to consider whether to exercise his discretion to increase Erin's support above the minimum presumptive level.

ing to the department's paternity complaint, is vacated insofar as it ordered the father to pay the mother weekly child support of $272.60. We remand this matter to the Probate and Family Court for entry of a new judgment ordering the father to pay the mother weekly child support of at least $389.42, and to consider the question of an additional sum based on Erin's needs and the father's ability to pay more than the presumptive minimum level of support. The judgment entered October 31, 2001, dismissing the department's modification complaint, is vacated. We remand this matter to the Probate and Family Court for further proceedings in accordance with this opinion.

*So ordered.*