## MAURA F. RICHARDS *vs*. MARTIN E. MASON.[1]

No. 99-P-1871.

Norfolk. November 15, 2001. - April 25, 2002.

Present: DUFFLY, KAPLAN, & KANTROWITZ, JJ.

*Name. Probate Court,* Change of name. *Parent and Child,* Child support, Sup-
port of child born out of wedlock. *Practice, Civil,* Support of child born
out of wedlock.

This court vacated an order, entered in an action on a complaint to modify
child support, requiring the child to be known by the defendant father's
surname, where the court did not address the factors to be considered in
determining whether the change of name would be in the child's best
interests. [569-572]

In an action for modification of child support, the judge did not abuse his
discretion in concluding that no increase in the original amount of child
support was warranted. [572-576]

COMPLAINT to establish paternity filed in the Norfolk Division
of the Probate and Family Court Department on September 30,
1988.

A complaint for modification, filed on October 25, 1996, was
heard by *Malcolm Jones,* J.

*Mark J. Gladstone* for the plaintiff.

*Terrance J. McCarthy* for the defendant.

*Andrea C. Kramer,* for Women's Bar Association of Mas-
sachusetts, amicus curiae, submitted a brief.

DUFFLY, J. Maura F. Richards appeals from a modification
judgment of the Probate and Family Court that did not increase
child support as she had requested, and ordered that the parties'
twelve-year old son be known by his father's surname.

The parties, who were never married, had a son, Joshua, born

---

[1]We acknowledge the filing of a brief by the Women's Bar Association of
Massachusetts as amicus curiae.

on May 8, 1987. In April, 1990, a judgment of paternity entered incorporating a stipulation of the parties that the mother would have custody and that Martin E. Mason, the father, would pay child support in the amount of $200 per week.[2] The mother commenced the within modification proceedings on October 25, 1996, seeking (insofar as is here relevant) increased child support in accordance with the Massachusetts Child Support Guidelines (guidelines) and G. L. c. 211B, § 15, and an order that the father obtain dental insurance and pay all of the child's uninsured dental expenses. The father counterclaimed, seeking a reduction in child support. During the proceedings, the father also requested that the court order the mother to resume the use of Mason as the child's surname.

*Joshua's surname.* Although neither the mother's complaint nor the father's counterclaim makes any claim regarding Joshua's surname, the record reflects that at least by the time of trial, both parties understood the father's demand (in essence a request for an injunction that the mother be required to resume the use of Mason as Joshua's last name)[3] to be before the trial judge for resolution.[4] Included in the modification judgment

---

[2]Neither the paternity judgment nor the stipulation are included in the record.

[3]The issue regarding the use of a child's surname arises generally in one of two procedural contexts: a change of name petition brought most often by a mother seeking to change the child's name from that of the father to her birth name or that of her new husband, see *Petition of Two Minors for Change of Name,* 25 Mass. App. Ct. 941 (1988), or an injunction brought by the father seeking to prevent the mother using as that child's surname a name other than that of the father. See *Margolis* v. *Margolis,* 338 Mass. 416, 417 (1959). Cf. *Cramer* v. *Hirsch,* 18 Mass. App. Ct. 986, 986 (1984) (claim that mother's change of children's names to that of her new husband was breach of separation agreement). See also Note, The Controversy Over Children's Surnames: Familial Autonomy, Equal Protection and the Child's Best Interest, 1979 Utah L. Rev. 303, 318 n.64; Note, Like Father, Like Child: The Rights of Parents in Their Children's Surnames, 70 Va. L. Rev. 1303 (1984); Weiner, "We are Family": Valuing Associationalism in Disputes Over Children's Surnames, 75 N.C. L. Rev. 1625, 1637 & n.51 (1997).

[4]The father's counsel stated in his opening and closing remarks to the court that the father sought compliance with the parties' stipulation and argued that Joshua's last name be Mason instead of Richards. There was no objection to these statements, nor to counsel's examination of the father and the mother regarding the stipulation and Joshua's surname. We disagree with the mother that the judge's order was "sua sponte," and therefore improper. We also do

was the order, "The child shall be known by his surname Mason. Counsel for the Father shall furnish the appropriate school authorities with a copy of this Order."

The judge made no findings in support of this aspect of the judgment, and we base our summary of facts on the evidence at trial. When Joshua was born, his full name was reflected on his birth certificate as Joshua Shannon Sullivan Mason. The parties separated soon after Joshua's birth. On October 1, 1989, the mother married Michael Richards, and Joshua has used the surname Richards since that time. In about February, 1991, the parties signed a written stipulation to the effect that Joshua would be known as Joshua Richards Mason. This document, not a part of the record, was never incorporated in an order or judgment of the court, and Joshua did not resume use of the surname Mason. Joshua has been in his mother's custody since his birth; he resides with his mother, his step-father, and two half-siblings, all of whom bear the surname Richards. The father has paid child support for approximately nine and one-half years and is not currently in arrears. He has maintained contact with his son since Joshua was about five years old when Joshua and the father participated in counseling for the purpose of "reintroducing" Joshua to the father. In the two- to three-year period preceding the trial he has increased the time spent with Joshua during visits. Distinctly absent from the evidence is any indication of the likely effect on Joshua of a change in his name from Richards, or whether he wishes his name to be changed to Mason.

We begin our discussion with the recognition that "at common law a person may change his name at will, without resort to legal proceedings, by merely adopting another name, provided that this is done for an honest purpose." *Merolevitz, petitioner,* 320 Mass. 448, 450 (1946). That a change of name petition may be sought pursuant to G. L. c. 210, § 12,[5] "does not abrogate the common law right to use a name of one's

not agree with the father's claim that there was no request for a change in the child's name, and that as a result the child must continue to use the surname on his birth certificate.

[5]General Laws c. 210, § 12 provides: "A petition for the change of name of a person may be heard by the probate court in the county where the

choosing. . . . It simply aids a petitioner in securing an 'official record which definitely and specifically establishes his change of name.' " *Verrill, petitioner,* 40 Mass. App. Ct. 34, 35-36 (1996), quoting from *Buyarsky, petitioner,* 322 Mass. 335, 338 (1948). Neither does the provision in G. L. c. 210, § 12, that a petition seeking to change the name of a person "shall be granted unless such a change is inconsistent with public interests," displace the "best interests" standard applicable to matters relating to the care and custody of children. See *Jones* v. *Roe,* 33 Mass. App. Ct. 660, 662 (1992). That standard is applicable to controversies surrounding the surnames of children, whether born to married or unmarried parents. See *ibid.*

Some of the factors to be considered in determining the child's best interest are set forth in *Jones* v. *Roe, supra* at 664. There we reversed a probate judge's order that the children assume their father's surname, noting that the judge's findings "did no more than focus on [the father's] compliance with his parental obligations [to pay support and comply with visitation arrangements]." *Id.* at 662. We went on to hold: "In resolving a dispute as to the surname of a child whose parents have not married, a court should not attribute greater weight to the father's interest in having the child bear the paternal surname than to the mother's interest in having the child bear her name." *Id.* at 663. Indeed, consideration of parental preference does not appropriately focus the inquiry on what the child needs, nor on the effect on the child of a change in his surname. We specified additional considerations relevant to the best interests equation, "includ[ing] the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent and other siblings; the length of time the child

petitioner resides. The change of name of a person shall be granted unless such change is inconsistent with public interests."

Whether a parent or guardian may undertake to change the name of a minor child as "next friend" of the child has not been decided. We have passed the issue in prior decisions. See *Jones* v. *Roe,* 33 Mass. App. Ct. 660, 660 (1992) (father petitioned to change surname of daughter from mother's to his own); *Petition of Two Minors for Change of Name,* 25 Mass. App. Ct. at 941 (court recognized that petition by two minor children was in reality being prosecuted by their mother).

has utilized a given name; the age of the child as it may relate to his or her identification with the surname; and the difficulties and embarrassment that the child may experience from bearing the present or proposed surname." *Id.* at 664.

None of these factors was addressed by the Probate Court judge and we, therefore, vacate the order and remand for further hearings.[6] Because Joshua is now fourteen years old and may well have formed his own view of the matter, the trial judge should determine whether Joshua is of sufficient maturity that his preference regarding his surname should be considered.[7]

*Child support.* The mother claims the judge erred when he ordered that the father continue to pay child support in the amount of $200 per week because the amount is inconsistent with the support to which she would be entitled pursuant to the guidelines. "We review for an abuse of discretion." *Crowe* v. *Fong*, 45 Mass. App. Ct. 673, 677 (1998).

Although the guidelines have presumptive application in all cases seeking the modification of a child support order, see *Canning* v. *Juskalian*, 33 Mass. App. Ct. 202, 204 (1992); *Buckley* v. *Buckley*, 42 Mass. App. Ct. 716, 723 (1997), judges have considerable discretion under the guidelines, and the exercise of this discretion may result in a range of proposed support orders. See, e.g., *Canning* v. *Juskalian*, *supra* at 204-205 (range of

---

[6]In so doing, we are mindful that societal views may have altered since our decision in *Jones*. For example, embarrassment or difficulty to a child in bearing a surname that differs from that of a custodial parent may no longer be as significant a factor as it once was. Likewise, commentators have recently voiced the notion that by considering the length of time the child has used a given name (in essence a presumption in favor of the status quo), historic patterns of patronymic naming may unduly favor the father. See, e.g., Weiner, "We are Family": Valuing Associationalism in Disputes Over Children's Surnames, 75 N.C. L. Rev. at 1692 & n.50; Doll, Harmonizing Filial and Parental Rights in Names: Progress, Pitfalls, and Constitutional Problems, 35 How. L.J. 227, 250 n.152 (1992). A custodial parent presumption in controversies involving the renaming of a child has gained recognition in some States. See, e.g., *Gubernat* v. *Deremer*, 140 N.J. 120, 144 (1995). See also *In Re Schiffman*, 28 Cal. 3d 640, 648-649 (1980) (Mosk, J., concurring). Either party is free to present evidence on remand whether additional considerations should now be entertained, and others abandoned.

[7]We note that a change of name may occur upon the adoption of a child, G. L. c. 210, § 6A, and that if the child is "above the age of twelve," his assent to the adoption is required. G. L. c. 210, §§ 2-3.

$204 to $237 per week under guidelines); *O'Meara* v. *Doherty*, 53 Mass. App. Ct. 599, 602-605 (2002) ($180 weekly support ordered by judge was within guidelines, notwithstanding that under mother's guidelines worksheet calculations $335.15 might have been ordered).[8]

Here, the probate judge concluded that if the guidelines were applicable to the circumstances,[9] $200 in weekly support was "adequate and reasonable in all respects," having "considered the reasonable needs of the child, the resources of the Father and needs of the parties, the income available to the Mother by reason of her present employment and the fact that the household in which the child resides is inhabited by Mother, her Husband and Mother's two other children. . . . Circumstances have changed since the date of entry of the current order, but not to an extent mandating increase or decrease of said financial order." Based on the judge's findings, and additional facts that, as we will indicate, are supported by uncontested evidence, *Schuler* v. *Schuler*, 382 Mass. 366, 371 (1981), we do not think the judge abused his discretion in failing to increase support. See *Buckley* v. *Buckley*, 42 Mass. App. Ct. at 723.

The preamble to the guidelines states, "modification may be allowed upon showing a discrepancy of [twenty percent] or

[8]The judge's finding that the guidelines, if applied, would call for an order of $379 does not compel the conclusion that there is only one amount that results from proper application of the guidelines. We do not have the benefit of the trial judge's calculations to know how he arrived at this number, nor has either party included in the record any child support worksheet reflecting how this number was arrived at. Such information would have been helpful. Extrapolating from the findings, we deduce that $379 would be the result of calculations that did not make any of the discretionary adjustments available under the guidelines. As we proceed to discuss, exercising such discretion would result, at the lowest end of the range, in a proposed order of less than $240 per week.

[9]In an alternative conclusion (indeed the primary basis on which the order rested), the probate judge incorrectly concluded that because the father's income exceeded the threshold income level to which the guidelines are applicable, the guidelines did not apply. It is the amount by which such income *exceeds* the threshold of $75,000 for a non-custodial parent to which the guidelines need not be applied. See Massachusetts Child Support Guidelines II-C; *Pearson* v. *Pearson*, 52 Mass. App. Ct. 156, 159-160 (2001). We may, however, affirm a correct decision on any sound basis. See *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992); *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 722 (1979).

more between an established order and a proposed new order calculated under these guidelines."[10] In the circumstances of this case, modification would not have been called for unless the proposed new order was equal to or in excess of $240 per week. The probate judge did not abuse his discretion in declining to modify support because a proposed new order would not have been equal to or in excess of $240 per week.

The judge found that the father's annual gross income was about $75,000 (this was supported by the evidence), and that the father paid $6,000 for the support of his daughter from another relationship. "[T]he court should deduct those payments from the gross income before applying the formula to determine the child support order." Massachusetts Child Support Guidelines II-I. See G. L. c. 209C, § 9(*f*); *O'Meara* v. *Doherty*, 53 Mass. App. Ct. at 603-604.

Basic child support is calculated as a percentage of the father's income (here, $75,000 less $6,000), resulting in a figure then subject to further guideline adjustments. The percentage is increased in fixed increments based on the number of children and level of income. With one dependent child and weekly income in excess of $501 (the father's weekly income being $1,396.92), twenty-seven percent is applied to income, which a judge has discretion to increase or decrease by two percent "in consideration of the totality of the circumstances." Massachusetts Child Support Guidelines III-A. See *Crowe* v. *Fong*, 45 Mass. App. Ct. at 677 n.2. The judge's findings that the father is a fifty-eight year old insulin-dependent diabetic, in poor health, who is unable to obtain health or life insurance and

---

[10]The basis for the parties' agreement that the father would pay $200 in support does not appear in the record, and we do not know whether it was an amount consistent with the guidelines or based on a rebuttal of the guidelines. If the latter, the rule that a modification is appropriate upon a showing that there is " 'a discrepancy of [twenty percent] or more between an established order and a proposed new order calculated under [the] guidelines' . . . does not apply." *Crowe* v. *Fong*, 45 Mass. App. Ct. 673, 677 (1998), quoting from Massachusetts Child Support Guidelines, introductory par. We also are unable to determine whether the father's present income, found by the judge to be $75,000 per year, is a substantial increase from his income at the time of the earlier agreement. We therefore proceed on the narrow question, whether on application of the guidelines to the facts of this case there is a greater than twenty percent discrepancy between the current order and a proposed new order under the guidelines.

who resides in a houseboat that is in a state of considerable disrepair comprise that "totality of circumstances" sufficient to justify a two percent decrease from twenty-seven percent to twenty-five percent.[11]

"According to their preamble, the guidelines are intended to 'encourage joint parental responsibility for child support in proportion to, or as a percentage of, income.' " *Crowe* v. *Fong,* 45 Mass. App. Ct. at 677. To reflect a custodial parent's contribution to support, the basic support figure is reduced by a number derived from a formula that determines what proportion custodial parent income bears to total parental income, with custodial parent income subject to a "disregard" of "*up to* a maximum of $15,000." Massachusetts Child Support Guidelines II-C (emphasis supplied).[12] The judge found that the mother earns $26,500 per year working about thirty hours per week; additional hours are available to her. The mother testified that she does not work full-time so as to be available to take her three children to their various after-school activities. She further testified that her husband pays half of the approximately $1,200 in total weekly household expenses, and that the family car is provided by the husband's employment. In these circumstances, it was within the judge's discretion to apply some or none of the "disregard" to the mother's annual income of $26,500. With no income disregard, basic support is reduced by nearly twenty-eight percent.[13]

Finally, the guidelines provide for adjustments that reflect the amount either parent must contribute to the child's health insur-

[11]An additional ten percent (the percentage depending on the age of the child) of the basic support amount (1,396.92 x .25 = $331.73) is then added to arrive at a new basic support amount ($331.73 + $33.17 = $364.90).

[12]The guidelines recognize "the principle that, in many instances, to maintain a domicile and a reasonable standard of living for the minor children, the custodial parent will choose to work," and on this basis custodial parent income is subject to a "disregard." Massachusetts Child Support Guidelines II-C.

[13]The formula adjusting basic child support based on custodial parent income is not described in the guidelines, but is set forth in a worksheet that accompanies the guidelines, which we reproduce in part below, with relevant data included:

ance costs[14] and to his extraordinary uninsured medical and dental expenses. Massachusetts Child Support Guidelines II-G. The father was ordered to pay one half of all of Joshua's uninsured "orthodontic bills or dental bills," found by the probate judge to total $4,200.[15] The guidelines provide that in these circumstances "consideration toward a reduction in the child support order should be given." Massachusetts Child Support Guidelines II-G(3).

In light of the foregoing, the judge did not abuse his discretion when, in calculating the amount of child support due under the guidelines, he concluded that no increase in the original amount of $200 per week was warranted. See *O'Meara* v. *Doherty*, 53 Mass. App. Ct. at 605.

*Conclusion.* The provisions in the modification judgment relative to child support are affirmed. The provision directing

---

CUSTODIAL PARENT INCOME ADJUSTMENT

| | |
|---|---|
| a) Custodial parent gross income | $ 26,500 |
| b) Less $15,000.00 | - N/A |
| c) Less day care cost (annual) | - N/A |
| d) Custodial adjusted gross | $ 26,500 |
| e) Non-custodial gross (annual) | $ 69,000 |
| f) Total available gross 3(d)+ 3(e) | $ 95,500 |

g) Line 3(d) 26,500 Line 3(f) 95,500

h) [Line] 3(d) divided by [Line] 3(f) 27.75 per cent

i) Adjustment for custodial income [27.75%] x [$364.90 adjusted basic order] $ 101.26

After deducting the custodial parent income adjustment of $101.26, the new basic support order is $263.64.

[14]According to the mother's testimony, family insurance which provided coverage for Joshua had been provided by her husband's employment and would be available from his new employer after ninety days. In the space on the mother's financial statement indicating her share of the weekly cost of medical insurance is inserted the amount of $6. There was no evidence that this cost was attributable to Joshua being included on the plan.

[15]The father's share of these costs would amount to an average of $40.38 per week for the year, thereby reducing basic support to $223.26. We recognize that the father's share of extraordinary dental costs may not continue to be $40.38 per week on average and that his obligation for the support of his daughter will also cease. That the cessation of these obligations could have been anticipated in the order does not preclude consideration of them upon any future complaint for modification.

that the child be known by the surname Mason is vacated, and the matter remanded to the Probate Court for further hearings consistent with this opinion.

*So ordered.*