## ROBERT J. CROAK, JR. *vs.* LORRAINE J. BERGERON.

No. 05-P-427.

Middlesex. May 9, 2006. - November 16, 2006.

Present: KANTROWITZ, BERRY, & DOERFER, JJ.

*Parent and Child,* Child support. *Divorce and Separation,* Child support, Modification of judgment.

A Probate and Family Court judge did not err in dismissing the plaintiff's complaint for modification of his child support obligations, where, notwithstanding her determination that certain settlement proceeds and inheritance sums of the plaintiff were includable in their entirety as income under the Massachusetts Child Support Guidelines, it was for the judge, in the exercise of her discretion upon consideration of all the circumstances (including the straitened financial circumstances of the plaintiff's former wife and children, as well as the plaintiff's pattern of nondisclosure and evasion with respect to his finances), to determine that the plaintiff's assets were sufficient to justify the dismissal. [753-759]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on June 25, 1996.

A complaint for modification, filed on March 14, 2000, was heard by *Judith Nelson Dilday,* J., and posttrial motions were also heard by her.

*Dana Alan Curhan (Brad P. Bennion* with him) for Robert J. Croak, Jr.

*Corey C. Shaw* for Lorraine J. Bergeron.

DOERFER, J. Following a trial in the Probate and Family Court on the plaintiff's (Robert Croak's) complaint for modification, the judge determined that Croak had failed to demonstrate a material and substantial change in circumstances sufficient to justify a reduction in his child support obligations. We affirm the judgment denying Croak's complaint for modification and directing him to pay to his former wife, Lorraine Bergeron, accrued child support in the amount of $118,640.76.

1. *Background.* The parties were married on December 13, 1991, and were divorced on April 2, 1998. Two children were born of the union.

Prior to the present controversy, Croak's support obligations had been the subject of various orders. A separation agreement incorporated into the final divorce judgment required Croak to pay weekly child support of $240. In April, 1999, while a complaint for modification filed by Bergeron was pending, the parties agreed that Croak would pay an additional $270 per week as alimony, thus increasing Croak's total support obligation to $510 per week. After a trial on Bergeron's complaint, a judge of the Probate and Family Court, applying the Child Support Guidelines (guidelines), entered a judgment of modification on October 6, 1999, increasing child support to $969.54 per week.[1]

On March 14, 2000, Croak filed the present complaint for modification seeking to reduce his child support obligation due to his alleged involuntary unemployment. On September 13, 2000, a temporary order was issued by a second probate judge, reducing the child support payment to $156.92 per week, but directing that the balance of the $969.54 was to continue to accrue until a hearing on the merits.[2]

After a trial on Croak's complaint for modification,[3,4] the

[1]The child support modification in 1999 was based upon the judge's calculation of Croak's income for the period from September 28, 1998, when he resumed work in the nuclear power industry after a period of unemployment, to July 9, 1999, in the amount of $2,609.49 per week. The amount of support was allocated as $918.54 per week for child support and $51 per week for health insurance costs. The judge found that Croak had been paying substantially less in child support than the amount called for by the guidelines.

[2]The second judge mistakenly stated in her temporary order, and later in her findings and judgment, that the earlier modification judgment called for a combined payment of $964 per week. Neither party makes an issue of the point.

[3]Jurisdictional issues arose in the matter as Bergeron and the children had moved to Rhode Island, but the modification action was ultimately heard in Massachusetts, where Croak resided at the time he filed his complaint. Cf. *Klingel* v. *Reill*, 446 Mass. 80, 86-87 (2006). After resolving the present action, the judge determined that "Rhode Island is the appropriate [jurisdiction] to resolve all future child support and custody matters between the parties." Bergeron has been receiving child support pursuant to a Rhode Island court order dated July 8, 2003.

[4]At trial, Croak, through counsel, requested that the judge take an average of the income he had earned during the three years between the issuance of

second judge found that Croak has a consistent history of working in the nuclear power industry although he, at times, has experienced periods of unemployment. The judge noted, however, that Croak had "carefully orchestrated his periods of unemployment to coincide with court appearances so that he [could] report that he [was] unemployed at that point in time and thereby evade the payment of guidelines support." Continuing, the judge found that in the year 2000 Croak's "aggregate gross income from all sources includable under the . . . Guidelines [including wages, business income, premature Individual Retirement Account (IRA) distributions in the amount of $64,159, and proceeds received by Croak in the amount of $60,000 in settlement of a claim against his father's estate[5]] was $187,365.00 or $76,756.00 more than he made in 1999, the year in which the [earlier] modification judgment was entered." For the year 2001, Croak reported on his Federal tax return a reduced gross income of $56,206 (including a premature IRA distribution of $12,193), but, the judge stated, he "could also live on the substantial assets accumulated at the end of 2000." The judge found that Croak's aggregate gross income for 2002 was $120,703, which sum included a trust distribution of $50,000 that Croak received as an inheritance from a relative.[6] In 2003, Croak's total earnings, considered to July 8, 2003, amounted to $4,272. In summary, the judge stated that since

the temporary order and the hearing on the merits and, applying that average amount, as well as the average income received by Bergeron, to the guidelines, conclude that the amount of child support which should have been paid to Bergeron during the period under review was $133 per week.

[5]Croak testified that his mother and father had owned as joint tenants a home in Massachusetts. After his parents' deaths (his mother predeceased his father), Croak learned that he had been "disinherited from the property." Croak brought a claim against the estate and eventually received a settlement from the estate which he characterized at trial as one "for previous improvements to a property where I was situated." Although Croak testified that he actually received about $40,000 from the settlement proceeds, after the payment of attorney's fees, he provided no supporting documentation concerning the amount of attorney's fees he paid and he makes no reference in his brief to the payment of attorney's fees. In all events, the judge's findings reflect that the judge was cognizant of Croak's claim that he had paid $20,000 to his attorneys.

[6]Earlier in her findings the judge stated that Croak's aggregate gross income for 2002 from all sources includable under the guidelines was $103,042. This figure was based, in part, on Croak's 1099 and W-2 forms which showed earned income of $53,042. (Croak failed to produce his prepared, but not

September 13, 2000, when his support order was temporarily reduced, Croak had received $447,700 in "income and assets"[7] while Bergeron and the children had struggled to meet their living expenses on a tiny fraction of that amount. On these facts, and others (which we shall discuss, *infra*), the judge concluded that Croak had failed to demonstrate a material change in circumstances and, in fact, had "wrongfully and considerably benefitted from the reduction in his child support during the pendency of this action." By a judgment dated November 19, 2003, the probate judge denied Croak's complaint for modification and ordered him to pay $118,640.76 to Bergeron, said sum representing the child support accrued ($964 per week minus $156.92 per week) during the 147-week period from September 13, 2000, to July 8, 2003 (the date of the Rhode Island support order, which was issued shortly before the hearing on the merits of Croak's complaint).[8] Croak has appealed.

2. *Discussion.* Croak argues that the judgment must be reversed as the judge grossly overstated for guidelines purposes his (Croak's) income during the three-year period under review. More specifically, he asserts that (1) it was error for the judge to count as *income* the one-time payments received by him from the settlement and the trust distribution or inheritance, and (2) it was improper "double counting" to treat funds prematurely withdrawn from his IRAs as income for child support purposes as those funds had already been divided as part of the marital estate upon divorce. He requests that the matter be remanded to the Probate and Family Court for a recalculation of child support based on "the correct income figures."

filed, 2002 Federal tax return in response to a subpoena served in hand.) The judge later found, however, that Croak represented on his most recent financial statement, dated October 17, 2003, which is not included in the record appendix, that his income in 2002 (apart from his inheritance) was $70,703.

[7]Although Croak does not challenge in his brief the amount found by the judge, it is difficult to discern on the record before us how the judge arrived at the figure. In all events, even if the income and assets amount was somewhat lower, it would not change the result that we reach in this case.

[8]Croak filed a motion for new trial that was denied. He also filed a motion for relief from judgment. Although no action appears formally to have been taken on the motion for relief from judgment, as that motion is identical to the motion for new trial, Croak assumes, as do we, that the judge treated the two motions as a single motion and denied them.

"[C]hild support is controlled by G. L. c. 208, § 28, and the Massachusetts Child Support Guidelines." *Korff* v. *Korff,* 64 Mass. App. Ct. 94, 95-96 n.5 (2005).[9] Except as otherwise stated therein, the guidelines have presumptive application to actions to modify existing orders. Child Support Guidelines, preamble.[10] This presumption may be rebutted upon a finding that the guidelines would be unjust or inappropriate in a particular case and that the best interests of the child have been considered. *Ibid.* See *Canning* v. *Juskalian,* 33 Mass. App. Ct. 202, 205-206 (1992), quoting from *Department of Rev.* v. *G.W.A.,* 412 Mass. 435, 439-440 (1992) (upon a finding rebutting the presumptive application of the guidelines, the judge was obliged "to fashion a more equitable order" and to base that effort on "all the relevant considerations"). Although a purpose of the guidelines is to "encourage joint parental responsibility for child support in proportion to, or as a percentage of, *income*

[9]We have noted that there is a slight difference in certain of the standards set forth in § 28 and the guidelines. See *Crowe* v. *Fong,* 45 Mass. App. Ct. 673, 677 & n.3 (1998). Croak does not address those differences on the appeal and does not challenge the judge's citation to § 28 for the proposition that an order for child support may be modified where the judge finds that a material and substantial change in the circumstances of the parties has occurred.

[10]The guidelines provide, in the preamble: "There shall be a presumption that these guidelines apply, absent agreement of the parties, in all cases seeking the establishment or modification of a child support order. A specific, written finding that the guidelines would be unjust or inappropriate and that the best interests of the child have been considered in a particular case shall be sufficient to rebut the presumption in that case." The guidelines further provide that "[a] modification may be allowed upon showing a discrepancy of 20% or more between an established order and a proposed new order calculated under these guidelines. The presumption establishing a proposed new order may be rebutted in cases where the amount of support required under the guidelines is due to the fact that the amount of the current support order resulted from a rebuttal of the guideline amount or by an allowance of an agreement of the parties and there has not been a change in the circumstances which resulted in a rebuttal of the guideline amount." Child Support Guidelines, preamble. The guidelines (effective February 15, 2002) also recite that they are not meant to apply where the combined gross income of the parties exceeds $135,000 or where the gross income of the noncustodial parent exceeds $100,000. Child Support Guidelines II-C. (The guidelines previously set the income limits at the $75,000/$100,000 level.) In cases where the parties' income exceeds these limits, the judge is to consider the award of support at the $100,000/$135,000 level as a minimum presumptive level of support to be awarded. *Ibid.* Additional amounts of child support may be awarded at the judge's discretion. *Ibid.*

. . ." (emphasis supplied),[11] Child Support Guidelines, preamble; see *Crowe* v. *Fong*, 45 Mass. App. Ct. 673, 677 (1998); *Richards* v. *Mason*, 54 Mass. App. Ct. 568, 575 (2002), we have stated that the "guidelines indicate that a judge is to consider the totality of the parties' circumstances in determining their support obligations." *Buckley* v. *Buckley*, 42 Mass. App. Ct. 716, 723 (1997). See *Schuler* v. *Schuler*, 382 Mass. 366, 373-376 (1981) (a pre-guidelines case); *Bassette* v. *Bartolucci*, 38 Mass. App. Ct. 732, 736-737 (1995); *Brooks* v. *Piela*, 61 Mass. App. Ct. 731, 734-735 (2004). See also Kindregan & Inker, Family Law and Practice § 39.7 (3d ed. 2002).

In the instant matter, it is apparent that the judge considered the "totality of the parties' circumstances" in dismissing Croak's complaint for modification. At the outset, it is to be emphasized that notwithstanding the judge's findings concerning Croak's earned income during the three years in question, the judge found that Croak had a pattern of nondisclosure and evasion with respect to his finances and, as we have indicated, that he carefully orchestrated his periods of unemployment to coincide with court appearances so that he could evade the payment of guidelines support. See *Crowe* v. *Fong*, 45 Mass. App. Ct. at 678-679 (judge entitled to draw inferences adverse to an evasive party from uncertainties attending that party's financial affairs); *Salten* v. *Ackerman*, 64 Mass. App. Ct. 868, 872-873 (2005) (in determining the amount of child support, the judge could take into account the husband's evasiveness as to finances). Although the judge did not attribute to Croak a specific amount of additional income, as a judge may when she determines that a party is earning substantially less than he or she could through reasonable effort, see Child Support

---

[11]The guidelines define income as "gross income from whatever source," including, but not limited to, twenty-six named sources of income (e.g., salaries and wages, bonuses, insurance benefits [including those received for disability and personal injury], income from trusts, contractual agreements, capital gains in real and personal property transactions to the extent that they represent a regular source of income, perquisites or in kind compensation to the extent that they represent a regular source of income, income from interest in an estate [direct or through a trust], lottery or gambling winnings received either in a lump sum or in the form of an annuity, and prizes or awards). Child Support Guidelines I-A. See *Rosenberg* v. *Merida*, 428 Mass. 182, 187 (1998) (describing the definition of income contained in the guidelines as "broad[]").

Guidelines II-H; *Flaherty* v. *Flaherty*, 40 Mass. App. Ct. 289, 291 (1996); *Crowe* v. *Fong, supra* at 679-680, the judge's findings, taken together, suggest strongly the view that Croak may have forgone (or manipulated) employment opportunities and that the income reported by him may not reflect the income he was capable of earning.

The judge also considered the settlement and the inheritance received by Croak as well as the straitened financial circumstances of Bergeron and the children. While acknowledging that the judge was "certainly entitled" to consider the inheritance and settlement proceeds received by him subsequent to the divorce in determining his ability to pay child support, Croak asserts that "these distributions should have been treated not as income, but as assets, with [only] the income attributable to such assets considered in determining the appropriate level of child support." See *Crowe* v. *Fong, supra* at 679 (judge would have been justified in treating at least $75,000 of $115,000 that the father received when he liquidated his business interests as available to him to produce interest income of approximately $115 per week for purposes of calculating his support obligation). See also Child Support Guidelines I-A(22) (including as a source of "income," "*income* from interest in an estate [direct or through a trust]" [emphasis supplied]). Implicit in Croak's argument is the proposition that the judge could not consider as income for guidelines purposes the inheritance or settlement itself.[12]

Notwithstanding the judge's findings that the settlement and

---

[12]There is a split among the jurisdictions as to the treatment of inheritances for purposes of the guidelines (which guidelines vary, to some extent, from State to State). "In some jurisdictions, the entire amount of the inheritance is included as gross income for purposes of determining child support. Other states, however, have held that only the interest generated by the inheritance constitutes gross income. A third approach, adopted in New York, is to treat inheritances as a factor in deviating from the basic child support obligation and awarding additional child support [citations omitted]." *Cody* v. *Evans-Cody*, 291 A.D.2d 27, 30-31 (N.Y. 2001) (there is statutory authority in New York authorizing a court to allocate a portion of a parent's inheritance to child support). At least one jurisdiction has adopted a hybrid approach, treating only that portion of an inheritance that a parent withdrew and spent as gross income, and the remainder of the inheritance as an interest-generating asset. See *In re A.M.D.*, 78 P.3d 741, 743, 746 (Colo. 2003). See also Morgan, Child Support Guidelines: Interpretation and Application § 2.03[e][4] (2006), and cases cited. Similarly, the courts of other jurisdictions have not always been

inheritance proceeds were includable in their entirety as income under the guidelines (a proposition we find troubling in view of the nonperiodic nature of the distributions), we think it is apparent that the judge had in mind that Croak had substantial *resources* upon which he could draw to pay child support during the three years under review. Indeed, the judge referred specifically in her findings and rationale to Croak's ability to "live on" his *assets* and to the substantial "income and *assets*" (emphasis supplied) he had received during the years in question. Even were we to assume that the one-time inheritance and settlement distributions should not have been included as "income" for purposes of the guidelines, the judge was not precluded from considering, as she did, the entire amount of those "assets" (not merely the income the assets could generate) in determining whether to modify Croak's child support obligation. Cf. *Crowe* v. *Fong, supra* (judge not limited to considering the income that the father could earn on $75,000 that he received upon liquidation of his business interests; "[i]t would have been permissible to treat the $75,000 as a fund out of which weekly support payments were to be made").[13] Such an approach is consistent not only with the pre-guidelines principle that a party's "ownership of a valuable asset demonstrates ability to pay," *Schuler* v. *Schuler*, 382 Mass. at 375 (modification action), quoting from *Krokyn* v. *Krokyn*, 378 Mass. 206, 213-214 (1979), but with the express policies of the guidelines "[t]o provide the standard of living the child would have enjoyed had the family been intact" and "[t]o meet the

uniform in their treatment of certain settlement proceeds. See, e.g., *id.* at § 2.03[e][7], and cases cited. In the instant matter, the judge simply cited to the guidelines for the proposition that "income is defined as gross income from whatever source." See note 11, *supra.*

[13]To the extent a consideration of available resources may involve some deviation from the guidelines, see *Cody* v. *Evans-Cody*, 291 A.D.2d at 30-31; *Humphreys* v. *DeRoss*, 567 Pa. 614, 624-625 (2002) (although under Pennsylvania's guidelines the corpus of an inheritance is not included in income, the guidelines provide that an asset, such as an inheritance, may be considered in deciding whether to deviate from the presumptive amount of support determined by the guidelines), we think it is implicit in the judge's findings and rationale that she was of the opinion that a substantial reduction in child support (as requested by Croak) based solely on Croak's alleged income would be unjust or inappropriate in the circumstances and not in the best interests of the child. See *Buckley* v. *Buckley*, 42 Mass. App. Ct. at 723.

child's survival needs in the first instance, but to the extent either parent enjoys a higher standard of living to entitle the child to enjoy that higher standard." Child Support Guidelines, preamble. A consideration of resources would seem particularly appropriate in the instant matter in view of Croak's use of his assets to support himself (and for other purposes beneficial to him) during, as found by the judge, his orchestrated periods of unemployment, while Bergeron and the children struggled to defray their living expenses.[14] It is for the judge, in the exercise of her discretion upon consideration of all the circumstances, to determine how substantial the assets possessed by a support provider must be (in circumstances where the support provider has otherwise experienced a decrease in income) to justify the dismissal of a modification complaint. *Schuler* v. *Schuler*, 382 Mass. at 375.[15]

Finally, we perceive nothing in Croak's argument that the judge engaged in improper "double counting" (or "double dipping") by treating his IRA funds "as both assets in the property division[16] and later, as income when Croak liquidated them," that would cause us to disturb the judgment.[17] "Commentators use the phrase 'double dipping' to describe the seeming injustice

[14]The judge found that Bergeron's total combined earned income, alimony, and unemployment income reported by her on her 2000, 2001, and 2002 tax returns was $64,339. Bergeron testified that since September 13, 2000, she has had difficulty making ends meet and has, on occasion, resorted to going to a "food pantry" to obtain free food. She also testified that she could not pay her health insurance.

[15]The court did not hold in *Schuler* v. *Schuler*, *supra*, that a support provider would have to deplete his total liquid or other assets in an effort to meet his support obligations.

[16]Although the parties' separation agreement and the divorce judgment are not included in the record appendix, neither party appears to dispute that Croak was assigned certain IRAs at the time of the divorce. (Croak testified that while he had $360,000 in "retirement funds" at the time of the divorce, he had spent those funds by the time of the modification trial in October, 2003). It is not clear whether Croak made additional contributions to his IRAs in 1998 or 1999, subsequent to the divorce (contributions which, if made, could not form the basis of a claim of double counting). As we have stated, Croak has not included in the record appendix the financial statement dated October 17, 2003, that he submitted to the court and which was referred to by the judge.

[17]Croak does not argue in any meaningful way that an IRA distribution per se cannot be included as income for purposes of the guidelines.

that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations." *Champion* v. *Champion*, 54 Mass. App. Ct. 215, 219 (2002). *Sampson* v. *Sampson*, 62 Mass. App. Ct. 366, 373-374 (2004). *Adlakha* v. *Adlakha*, 65 Mass. App. Ct. 860, 865 (2006). See *Dalessio* v. *Dalessio*, 409 Mass. 821, 828 (1991), *S.C.*, 413 Mass. 1007 (1992). Although "[c]ourts and commentators have often disagreed . . . as to what constitutes double-dipping," *Sampson* v. *Sampson, supra* at 374, we have stated that there is nothing in the Supreme Judicial Court's *Dalessio* decision, *supra*, or in G. L. c. 208, § 34,[18] that prohibits double dipping as matter of law. See *Champion* v. *Champion, supra* at 222. Rather, as Croak acknowledges in his brief, the judge must look to the equities of the situation to make her determination. See *ibid.*

Even were we to assume that the concept of double counting has application in the present case, and were to assume further that the judge engaged in some double counting, we would conclude that, in the circumstances presented here (including, as we have discussed, Croak's use of his IRA funds as a replacement for earnings and for his own support and benefit during his periods of unemployment, and the parties' disparate economic positions), a failure to consider the IRAs would have resulted in an inequity. See *ibid.*

Upon review of the totality of the circumstances, and giving due deference to the discretion accorded the judge, we conclude that the judge did not err in dismissing Croak's complaint for modification.[19]

*Judgment affirmed.*

*Order denying postjudgment motions affirmed.*

---

[18]The present case is an action to modify child support under G. L. c. 208, § 28.

[19]Croak raises no argument in his brief that he does not have the ability to comply with the judge's order for the payment of the accrued child support.